UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN G. C.,[1]<br><br>     Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>     Defendant. | Case No. CV 19-08152-RAO<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I. **INTRODUCTION**

  Plaintiff Susan G. C. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is REVERSED, and the matter is REMANDED.

## II. **PROCEEDINGS BELOW**

  On or about November 30, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning June 13, 2014.  (Administrative Record ("AR") 170-

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

71.)  Her application was initially denied on March 4, 2016 (AR 88-91), and upon reconsideration on August 8, 2016 (AR 95-99).  Plaintiff filed a written request for a hearing, and a hearing was held on June 1, 2018.  (AR 30-61, 101-02.)  Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert.  (AR 30-61.)  During the hearing Plaintiff amended her alleged disability onset date to January 8, 2015.  (AR 33-34.)  On October 15, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from January 8, 2015 through the date of the decision.  (AR 24.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)  Plaintiff filed this action on September 20, 2019.  (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 8, 2015, the alleged onset date ("AOD").  (AR 17.)  At **step two**, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease; asthma; and kidney disease.  (*Id.*; *see* AR 17-20.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (AR 20.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work . . . but with frequent postural activities, except for occasional ladders, stooping, crouching, and crawling, and occasional overhead reaching on the right.  [Plaintiff] needs to avoid concentrated exposure to dusts, odors, and fumes.  [Plaintiff] would also need one additional five-minute restroom break per hour."  (AR 21.)

///

2

At **step four**, the ALJ found that Plaintiff is capable of performing past relevant work as an administrative assistant.  (AR 25.)  Accordingly, the ALJ determined that, as to Plaintiff's claim for period of disability and DIB, Plaintiff had not been under a disability from January 8, 2015, through the date of the decision. (AR 24.)

III.   **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means--and means only--'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the

ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.   DISCUSSION

Plaintiff raises three issues for review: (1) whether the ALJ erred in rejecting Plaintiff's subjective symptom testimony; (2) whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician regarding her physical limitations; and (3) whether the ALJ erred in finding that Plaintiff can perform her past relevant work. (*See* Joint Submission ("JS") 2.) For the reasons below, the Court reverses.

### A.   The ALJ Did Not Err in Rejecting Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ "improperly rejected Plaintiff's testimony regarding her subjective symptoms and functional limitations, failing to provide any specific, clear and convincing reasons for doing so." (JS 2; *see* JS 2-8.) The Commissioner contends that the "ALJ provided multiple well-supported reasons for discounting Plaintiff's allegations of disabling pain and dysfunction." (JS 9; *see* JS 8-13.)

#### 1.   Plaintiff's June 1, 2018 Testimony

Plaintiff explained that after January 2015 she was unable to work due to chronic pain from her lumbar spine down to her ankle. (AR 39.) She reported experiencing pain every time she sat down and when she tried to walk. (*Id.*) She "basically stopped walking" due to the pain, but tries to walk "a tiny bit of [her] cul de sac." (*Id.*) However, she gets a burning sensation in her back that travels all the way to her leg and foot. (AR 40.) Plaintiff takes tramadol to relieve the pain, and explained that her physician did not want her to use anything stronger because of her kidneys. (*Id.*)

///

Plaintiff previously worked as an office manager at a school. (AR 35, 40.) Her job required that she lift ten to 20 pounds of supplies. (AR 54.) She spent half of her time sitting and the other half on her feet. (AR 54-55.) Plaintiff explained that she is unable to return to work because she is in too much pain. (AR 40-41.) She is unable to focus because of the pain and needs to rest. (AR 41.)

Plaintiff reported that during the day she rests. (AR 41.) Plaintiff's spouse takes her to the market, and he does the driving, shopping, and carrying. (*Id.*) Plaintiff walks "a little bit" in the market. (*Id.*)

Plaintiff reported that her urinary tract infections ("UTI") and kidney disease also prevent her from working. (AR 41-42.) She explained that because of the UTIs she has to "urinate a lot," experiences a lot of pressure, pain, and needs to be near a bathroom. (AR 42.) She has had a UTI once or twice a month for the last "couple of years." (*Id.*) Each UTI lasts approximately four to five days. (AR 52.) During this time, she experiences nausea, can only "urinate a little amount," feels "lots of pressure down," and "basically hurt[s]." (*Id.*) She stays home, but makes doctors' appointments in the afternoon and runs an errand or two. (*Id.*) Plaintiff's spouse drives her to the doctor. (*Id.*) When Plaintiff goes to the market, she "know[s] right where the restroom is." (AR 52-53.) She takes an antibiotic daily which "slowed it down a little bit," but reported experiencing nausea as a side effect. (AR 42-43.)

Plaintiff was also in a car accident in November 2017. (AR 43.) She reported that her shoulder, arm, and neck prevent her from working. (*Id.*) Plaintiff receives physical therapy twice per week. (AR 44.) She was still being treated at the time of the hearing. (AR 44-45.)

Plaintiff explained that sitting also presents a problem. (AR 45.) She has to get up frequently and "walk around a tiny bit." (*Id.*) Her bones hurt when she gets up. (*Id.*) Plaintiff reported that everything hurts. (*Id.*) She testified that she can sit for 30 minutes before her back starts to ache and hurt. (AR 50.) She experiences a pain shooting down her leg. (*Id.*) In order to relieve the pain, she walks around the

house for five to ten minutes. (*Id.*) Plaintiff reported being able to walk for 12 or 15 minutes. (*Id.*) She can stand for approximately ten minutes. (AR 51.) She can lift approximately five pounds; any more weight would hurt her lower back. (*Id.*)

She reported having a lot of anxiety about being in pain. (AR 46.) She takes Zoloft (AR 45-46), and sees a psychiatrist (AR 46). She explained that she has difficulty concentrating. (AR 53.) For example, she has had a book sitting in her house for three years and has not read it yet because she cannot focus. (*Id.*) Similarly, she has difficulty focusing when watching television. (AR 53-54.)

Plaintiff tried physical therapy for back pain relief, but she reported no improvement and explained that the therapy made the pain worse. (AR 47.) Plaintiff received four epidural injections, which offered some relief, but the pain returned. (AR 47.) She explained that she could not visit the physician who recommended the epidural injections because he was no longer within her insurance and she could not afford to visit him. (AR 48.)

Plaintiff reported that because she is not able to exercise and walk like she used to, she gained weight. (AR 49.) Weight loss surgery was suggested, but Plaintiff initially declined. (*Id.*) However, she explained that she was participating in the classes required to have the surgery. (*Id.*) Plaintiff explained that her weight gain added stress on her back and made it difficult for her to move and walk. (AR 53.)

### 2. Plaintiff's Function Report

On December 14, 2015, Plaintiff prepared a function report. (*See* AR 197-205.) Plaintiff reported being limited in her ability to work due to the pain from sitting and standing which prevents her from walking or exercising. (AR 197.) She has "numbness, tingling, [and] pain 100% of the time." (*Id.*)

During the day, Plaintiff lays down, rests, and watches television. (AR 198.) She has gained weight because she has not been able to be active. (*Id.*) Plaintiff and her husband take care of each other. (*Id.*) Plaintiff does not take care of any pets, but her spouse takes care of two dogs with the help of a neighbor. (*Id.*) Before

developing her condition, Plaintiff was able to sit, walk, and exercise.  (*Id.*) Plaintiff's condition affects her ability to sleep, but she has been prescribed medication to help her sleep.  (*Id.*)

Plaintiff reported that she is unable to get dressed because she cannot stand on her right leg.  (AR 198.)  She does not need to be reminded to take care of her personal needs or to take her medications.  (AR 199.)  Plaintiff is not responsible for preparing meals, but does prepare meals "maybe twice a month."  (*Id.*)  She spends one- or two-hours preparing meals and does need help.  (*Id.*)  She cannot lift big pots and cannot stand long.  (*Id.*)

Plaintiff's husband does the laundry.  (AR 199.)  Plaintiff noted that she does laundry once per week with help from her husband.  (*Id.*)  She explained that she does not do house or yard work because her back and right leg are under a lot of pain. (AR 200.)  She sits outside when it is sunny.  (*Id.*)  When she goes out, she rides in a car.  (*Id.*)  She reported that she does drive.  (*Id.*)

Plaintiff shops in stores, by phone, and by computer.  (AR 200.)  She shops for food and Christmas items.  (*Id.*)  She shops once a week for less than an hour.  (*Id.*) Plaintiff reported being able to pay bills, count change, handle a savings account, and can use a checkbook and money orders.  (*Id.*)  Her ability to handle money has not changed since her illness began.  (AR 201.)

Plaintiff's hobbies and interests include watching television, reading, and laying down.  (AR 201.)  Plaintiff reads one hour per day and watches television most of the time while laying down.  (*Id.*)  Before her condition began, she was more active and was able to work, but explained that her condition has "gotten progressively much worse."  (*Id.*)  She spends time with others when people visit her and uses the phone.  (*Id.*)  Plaintiff mostly stays home.  (*Id.*)  She needs to be reminded to go places.  (*Id.*)  She goes to the doctor "a lot" and her husband drives her most of the time.  (*Id.*)  She does not have a problem getting along with others.  (AR 202.)

///

7

Plaintiff reported that her conditions affect her ability to lift, squat, bend, stand, walk, sit, kneel, hear, and climb stairs.  (AR 202.)  Her abilities to remember, complete tasks, concentrate, understand, and follow instructions have also been affected.  (*Id.*)  Plaintiff can lift between two and five pounds and can walk down her street very slowly.  (*Id.*)  She can walk between 100-200 feet before needing to rest three to five minutes.  (*Id.*)  She can pay attention between ten and 20 minutes.  (*Id.*)  She does not finish what she starts.  (*Id.*)  She does not follow written instructions well because she cannot remember things.  (*Id.*)  She follows spoken instructions better than written instructions, but finds it very hard to concentrate.  (*Id.*)

Plaintiff gets along "fine" with authority figures and has never been laid off from a job because of problems getting along with other people.  (AR 203.)  She does not handle stress well.  (*Id.*)  She gets nervous and forgets things.  (*Id.*)  Similarly, changes in routine bother her and cause her to stress.  (*Id.*)  Plaintiff fears losing her mother.  (*Id.*)

Plaintiff wears glasses.  (AR 203.)  She takes sertraline which causes her to be sleepy and quiet.  (AR 204.)  She also takes Zetia.  (*Id.*)  Plaintiff also takes furosemide which causes her to "urinate often."  (*Id.*)  Plaintiff also takes "many medications" for high blood pressure and other medical conditions.  (*Id.*)  She has had three operations for her thyroid condition.  (*Id.*)  She also reported having an epidural steroid shot that helped her feel better for a couple of days, but the pain returned.  (*Id.*)  Plaintiff noted that filling out the form was "killing" her due to the pain she experienced from sitting in a chair.  (*Id.*)

### 3.    Applicable Legal Standards

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 4. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21; *see* AR 22-24.)

The Court's review of the ALJ's decision shows that, in finding the record did not support Plaintiff's alleged level of incapacity, the ALJ relied on: (1) Plaintiff's course of treatment; (2) Plaintiff's activities of daily living; (3) Plaintiff's reason for cessation of work; and (4) the lack of supporting objective medical evidence. (AR 36; *see* AR 32-36.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Course of Treatment

In finding that the record did not support Plaintiff's alleged level of incapacity, the ALJ found that Plaintiff " has treated [sic] for her impairments minimally in light of her complaints of chronic pain." (JS 24.) When a claimant complains of disabling pain but does not seek treatment, the ALJ may determine that the claimant's complaint is unjustified or exaggerated. *Orn*, 495 F.3d at 638 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ observed that, in relation to her low

back pain, Plaintiff requested a referral for surgery, but failed to pursue surgical intervention.  (AR 22, citing AR 269, 466.)  Additionally, the ALJ noted that while Plaintiff alleged continued lower back pain resulting from a car accident, it did not appear that Plaintiff received treatment for lower back pain resulting from a car accident.  (AR 22; *see* AR 43-44.)

Additionally, the ALJ relied on Plaintiff's improvement with medication.  (*See* AR 21-22.)  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  As to Plaintiff's back pain, the ALJ observed that Plaintiff "underwent several epidural steroid injections, with improvement noted from [the] same."  (AR 22, citing AR 393, 396, 398, 403, 686, 663.)  The ALJ relied on a September 2017 progress note which documented that Plaintiff has received "epidural injections with good success for several months at a time."  (AR 686.)  The ALJ also pointed to an October 2017 office visit where Plaintiff underwent an injection and "within several minutes," Plaintiff reported decreased pain.  (AR 663.)  Similarly, as to Plaintiff's kidney disease, UTIs, and sepsis, the ALJ reasoned that while Plaintiff had been hospitalized due to sepsis and a UTI, she "improved rapidly with medication."  (AR 22, citing AR 432, 444-45.)

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.  *See Orn*, 495 F.3d at 638.

### b.  Reason No. 2: Activities of Daily Living

In finding that the record did not support Plaintiff's alleged level of incapacity, the ALJ points to Plaintiff's admissions that she "is able to go outside, go out alone, drive, walk around her cul-de-sac, and shop in stores."  (AR 22; *see* AR 24.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346

1    (9th Cir. 1991).  But a claimant need not be utterly incapacitated to obtain benefits.

2    *Fair*, 885 F.2d at 603.  The ALJ may also rely on a claimant's "daily activities to

3    form the basis of an adverse credibility determination" where the activities contradict

4    the claimant's other testimony.  *Orn*, 495 F.3d at 639; *see Burkett v. Berryhill*, 732

5    F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting

6    is one way in which an ALJ may consider a claimant's daily activities, an ALJ may

7    also discount claimant testimony where reported daily activities contradict the

8    claimant's alleged extent of her limitations.").

9         First, Plaintiff contends that the ALJ misstated Plaintiff's daily activities.  (JS

10   6.)  In support, Plaintiff, points to her hearing testimony where she explained that her

11   husband does the shopping and the driving.  (*Id.*, citing AR 41.)  Additionally, she

12   points to her function report where she reported that her husband does all the laundry.

13   (JS 6, citing AR 199-200.)  "An ALJ errs when he or she mischaracterizes a

14   claimant's testimony by ignoring reports that daily activities are conducted with

15   assistance, with great pain, or with limitation-related disruptions." *Furtado v. Colvin*,

16   No. 13-CV-04063-HRL, 2017 WL 1365208, at *3 (N.D. Cal. Apr. 14, 2017) (citing

17   *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Benecke v. Barnhart*, 379

18   F.3d 587, 594 (9th Cir. 2004)).

19        Here, the ALJ mischaracterizes some of Plaintiff's statements.  Plaintiff did

20   not state that her husband did all the shopping, but rather that he did *most* of the

21   shopping and takes her to the market.  (*See* AR 41.)  However, Plaintiff testified that

22   she shops in stores with the help of her husband.  (AR 41, 52.)  Plaintiff testified that

23   it is her husband that does the driving and the carrying.  (*Id.*)  In her function report,

24   Plaintiff did note that she shopped once a week for less than an hour, but did not

25   report needing assistance.  (*See* AR 200.)  As to Plaintiff's ability to drive, the ALJ

26   relied on the 2016 psychiatric evaluation where Plaintiff reported that she has a

27   driver's license.  (AR 22, citing AR 245.)  Plaintiff did not state that she actively

28   drives, but rather only stated that she has a license.  (*See* AR 245.)  In her function

report, when asked about form of travel, Plaintiff reported only that she rides in a car and noted that her husband drives her "mostly." (*See* AR 200-01.) Similarly, during the hearing she testified that her husband does most of the driving. (*See* AR 41.)

The ALJ's mischaracterizations cannot support the ALJ's finding that Plaintiff's activities of daily living were inconsistent with Plaintiff's subjective symptom testimony. *See Rawa v. Colvin*, 672 F. App'x 664, 666 (9th Cir. 2016) (finding that where "the ALJ omitted a number of salient and dispositive facts and details when recounting [claimant's] activity level," including the fact that claimant drove only a couple of times per week and the fact that she experienced pain while engaged in certain activities, "[s]uch an inaccurate representation of the record cannot constitute a specific, clear, and convincing reason for rejecting" claimant's subjective symptom testimony); *Corless v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 3d 1172, 1178 (D. Ariz. 2017) (finding that the ALJ committed error where the "ALJ conspicuously omitted the pain and difficulties [p]laintiff experiences performing even the simplest daily activity").

Second, Plaintiff contends that the ALJ did not explain how any specific activity was inconsistent with Plaintiff's allegations and did not identify any daily activities that involved skills that would translate to a work setting at the light level of exertion. (JS 7.) The Commissioner argues that the record reflects that Plaintiff engaged in activities that contradict her alleged level of dysfunction. (JS 12.) In support, the Commissioner points out that despite alleging low back pain, Plaintiff reported swimming for exercise. (*Id.*, citing AR 411, 642.) The ALJ, however, did not rely on Plaintiff's alleged swimming exercise. (*See* AR 22-24.) Therefore, the Court cannot consider the Commissioner's post hoc rationale. *See Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

"The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse

credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch*, 400 F.3d at 681) (alteration in original). Here, in discussing Plaintiff's low back pain, the ALJ only states that "[b]y her own admission, [Plaintiff] is able to go outside, go out alone, drive, walk around her cul-de-sac, and shop in stores once a week." (*See* AR 21-22.) As discussed above, the ALJ mischaracterized some of the evidence used to support that statement. Additionally, the ALJ failed to provide the level of specificity required to reject or discount Plaintiff's testimony. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

Accordingly, this was not a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

### c. Reason No. 3: Reason for Cessation of Work

In finding that the record did not support Plaintiff's alleged level of incapacity, the ALJ observed that Plaintiff "noted that she stopped working not due to her impairments but because she was laid off." (AR 22.)

Plaintiff contends that while Plaintiff lost her job in June 2014, she was placed on state disability on, and amended her AOD to, January 8, 2015. (JS 8.) The Commissioner contends that it was appropriate for the ALJ to consider the reasons why Plaintiff stopped working. (JS 13.) The Commissioner argues that the "fact that her impairments did not directly contribute to her unemployment raises an inference that she may have been able to continue working if not for her company going out of business." (*Id.*)

An ALJ may reasonably consider the fact that a claimant stopped working for reasons other than their alleged disability. *Butler v. Saul*, 785 F. App'x 389, 390 (9th Cir. 2019) (citing *Tommasetti*, 533 F.3d at 1040). Some courts in this district have found that time between the last date of employment and the AOD "lessens the impact of [an] admission that [claimant] originally stopped working for non-disability reasons." *Thomas v. Colvin*, No. CV 15-01451-RAO, 2016 WL 1733418,

1    at *5 (C.D. Cal. Apr. 29, 2016) (citing *Shehan v. Astrue*, No. EDCV 08-01302

2    (MLG), 2009 WL 2524573, at *3 (C.D. Cal. Aug. 17, 2009) (finding plaintiff's non-

3    disability "reasons for leaving her earlier jobs was not a proper basis for rejecting her

4    credibility[,]" in part, because those "jobs ended long before her alleged onset date

5    of August 2005")).  Here, Plaintiff was laid off in June 2014 when her employer went

6    out of business (AR 245), and filed her application for disability on November 30,

7    2015 (AR 170-71).  While Plaintiff later amended her AOD to January 8, 2015

8    because that was when she began receiving state disability insurance (*see* AR 33),

9    the six-month difference in the amended AOD is not so distant from when she

10    stopped working as to lessen the impact of Plaintiff's admission that she stopped

11    working because she was laid off.

12           Thus, this was a specific, clear, and convincing reason for discounting

13    Plaintiff's subjective symptom testimony.  *See Molina v. Berryhill*, 734 F. App'x

14    492, 494 (9th Cir. 2018) (finding that the fact that claimant stopped working for

15    reasons unrelated to health was a specific, clear, and convincing reason for

16    discounting claimant's testimony).

17             *d.  Reason No. 4: Lack of Supporting Objective Medical Evidence*

18           The ALJ found that "[t]he medical evidence of record generally does not

19    support [Plaintiff's] alleged loss of functioning."  (AR 21.)  The lack of supporting

20    objective medical evidence cannot form the sole basis for discounting testimony, but

21    it is a factor that the ALJ may consider in making a credibility determination.  *Burch*,

22    400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20

23    C.F.R. § 404.1529(c)(2)).

24           As to Plaintiff's low back complaints, the ALJ observed that July 2015 lumbar

25    spine x-rays documented Plaintiff's severe degenerative disc disease at L2-3 and an

26    October 2015 showed multilevel spondylosis which was most notable at L2-3 and

27    showed hypertrophy at L4-5 and L5-S1.  (AR 22, citing AR 242-43, 267-68.)  The

28    ALJ recognized that Plaintiff, at times, was documented to have "limited range of

motion, tenderness to palpitation at L4-5 and L5-S1, muscle spasm, abnormal or positive straight leg raising, decreased strength, and positive facet loading, and . . . reported no improvement with physical therapy." (AR 22, citing AR 241, 263, 272, 315, 318, 390, 401, 406, 417, 437, 535, 567, 689.) The ALJ, however, also observed that Plaintiff reported experiencing no weakness, numbness or shooting pains, she denied having back pain, and underwent "several epidural steroid injections" with reported improvement. (AR 22, citing AR 258, 260, 263, 305, 388, 390, 393, 396, 398, 403, 566, 663, 686.) The ALJ relied on physical examinations which documented Plaintiff had normal gait, strength and motor function, full range of motion, no tenderness with percussion, symmetric reflexes, and negative straight leg raising. (AR 22, citing AR 240-41, 272, 318, 390, 399, 401, 406, 417, 430, 439, 535, 567.)

As to Plaintiff's asthma, the ALJ relied on records documenting no shortness of breath, dyspnea, wheezing, chronic cough, pleuritic chest pain, headaches, or lightheadedness. (AR 22, citing AR 255, 258, 262, 271, 297, 302, 307, 312, 317, 322.) The ALJ also observed that the physical exams rendered clear lungs to auscultation, no wheezing, rales or rhonchi, and documented a good respiratory effort. (AR 22, citing AR 254, 258, 263, 272, 298, 303, 308, 313, 318, 323, 333.)

As to Plaintiff's kidney disease, UTIs, and sepsis, the ALJ noted that Plaintiff complained of right kidney and right sided flank pain, had gallstones removed, and imaging documented a left upper pole renal lesion. (AR 22, citing AR 309-10, 315, 328, 337, 339, 362-63.) However, the ALJ observed, and relied on the fact, that Plaintiff reported experiencing, no fever, chills, vomiting, weight loss, back pain, bleeding, frequently reported no urinary or abdominal pain, and was, at times, asymptomatic. (AR 22, citing AR 302, 307, 411, 417, 426, 429, 468, 491, 496, 498, 513, 519, 543, 546, 555, 558, 566, 669, 677.) The ALJ also relied on "predominantly unremarkable" physical exams documenting non-palpable kidneys, no rebounding or

1   guarding and non-tender, non-distended abdomen, and stable creatinine levels. (AR
2   22, citing AR 409, 485, 496, 500, 509, 514, 521-22, 548, 558, 573, 674, 678.)

3        The Court finds that the ALJ thoroughly considered Plaintiff's medical records
4   (*see* AR 21-23) and found that the records did not support Plaintiff's allegations of
5   disabling symptoms and limitations (*see* AR 24). *See Reddick*, 157 F.3d at 725.
6   Throughout the records are examination notes and reports showing normal and
7   unremarkable results, all of which the ALJ was permitted to rely on in assessing
8   Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010)
9   (finding that an ALJ properly considered a claimant's normal exam findings when
10  noting a lack of objective medical evidence to support the claimant's allegations);
11  *Margolis v. Berryhill*, No. CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal.
12  June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations
13  in discounting a claimant's subjective testimony).

14       Plaintiff contends that "the ALJ failed to consider that the overwhelming
15  medical evidence in the record did support Plaintiff's testimony regarding her
16  symptoms and functional limitations, and instead cited to isolated pieces of evidence
17  to justify his conclusion that Plaintiff's allegations were not credible." (JS 6; *see* JS
18  5.) Notably, the ALJ discussed the "abnormal medical findings" which Plaintiff
19  alleges support her allegations and Plaintiff fails to point to any relevant medical
20  evidence which may have been of consequence to the ALJ's decision. (JS 5; *see* AR
21  22.) The ALJ was allowed to weigh the multiple normal examination results in
22  evaluating Plaintiff's testimony. Where, as here, the evidence might be susceptible
23  to more than one rational interpretation, the ALJ's decision should be upheld. *See*
24  *Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882
25  ("If the evidence can support either affirming or reversing the ALJ's conclusion, we
26  may not substitute our judgment for that of the ALJ.").

27       Accordingly, the ALJ's finding that the objective medical evidence does not
28  support Plaintiff's statements constitutes a specific, clear and convincing reason for

discounting Plaintiff's subjective symptom testimony.

### 5.    Conclusion

The Court finds that the ALJ gave three specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant testimony was "harmless error" where ALJ relied on other specific, clear and convincing reasons). As such, the ALJ properly evaluated Plaintiff's subjective complaints.

### B.    <u>The ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physician Regarding Her Physical Limitations</u>

Plaintiff contends that the ALJ improperly rejected the opinions of Jan Janay, M.D., regarding Plaintiff's physical limitations, by failing to present any specific and legitimate reasons supported by substantial evidence. (JS 14; *see* JS 14-17.) The Commissioner contends that the ALJ "provided the requisite good reasons for assigning less weight to Dr. Janay's opinions." (JS 17-19.)

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbin*s, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine

or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison*, 759 F.3d at 1012.

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted).

On June 1, 2016, Dr. Janay prepared a Physical Residual Functional Capacity Questionnaire. (*See* AR 384-87.) Dr. Janay reported that he saw Plaintiff every four to 12 weeks for 20 to 40 minutes. (AR 384.) Plaintiff was diagnosed with chronic lumbar radiculopathy and major depression, but had a fair prognosis. (*Id.*)

After summarizing Plaintiff's symptoms and clinical findings, Dr. Janay opined that Plaintiff's ability to lift and carry had been affected by her impairments. (AR 385.) Specifically, Dr. Janay opined that Plaintiff could occasionally lift or carry less than ten pounds, but could never lift or carry more than ten pounds. (*Id.*) Similarly, Dr. Janay opined that Plaintiff's ability to stand and walk had been affected such that Plaintiff could stand and/or walk for less than two hours in an eight-hour workday. (*Id.*) Dr. Janay opined that Plaintiff had to use a cane or other assistive device in order to stand and/or walk. (*Id.*) Plaintiff could sit for less than six hours in an eight-hour workday. (*Id.*) She would need a job that allows her to shift position

from sitting, standing, or walking. (*Id.*) Dr. Janay also found that Plaintiff would need to take unscheduled breaks every one- to two- hours. (*Id.*) Additionally, Plaintiff would be absent from work more than three times per month due to her condition. (*Id.*)

Dr. Janay also opined that Plaintiff's ability to push and pull were affected by her impairments such that she cannot lift because of her back pain, and she cannot bend. (AR 386.) Plaintiff could never bend, crouch, kneel, or crawl, but could occasionally climb and balance. (*Id.*) Due to lower back pain, Plaintiff could occasionally reach, handle, and finger. (*Id.*) Dr. Janay found Plaintiff did not have any visual, hearing, or communication problems. (*Id.*) Similarly, Dr. Janay opined that there were no environmental limitations. (*Id.*)

On April 10, 2018, Dr. Janay prepared a second Physical Residual Functional Capacity Questionnaire presenting the same functional limitations as those in the 2016 questionnaire. (*See* JS 694-97.) Dr. Janay did note that in addition to Plaintiff's 2016 diagnoses, Plaintiff now had neck pain, right shoulder pain, and anxiety. (AR 694.)

The ALJ afforded these opinions "little weight." (AR 23.) First, the ALJ reasoned that the opinion is inconsistent with the evidence of record. (*Id.*) An ALJ may reject a physician's opinion where the opinion is inconsistent with the medical record. *Tommasetti*, 533 F.3d at 1041. In finding Dr. Janay's opinions were inconsistent with record, the ALJ relied on physical examinations documenting normal strength, full range of motion, normal motor function, and normal gait with no evidence that Plaintiff uses an assistive device. (AR 23, citing 240-41, 272, 318, 390, 399, 401, 406, 417, 430, 439, 535, 567, 690.) The ALJ reasoned that these findings did not support a finding that Plaintiff is limited to "essentially sedentary work."[2] (AR 23-24.) The Court concludes that the ALJ set out a detailed and

---

[2] Plaintiff argues that the ALJ "mischaracterized Dr. Janay's opinion regarding Plaintiff's physical limitations, incorrectly asserting that Dr. Janay 'essentially

19

thorough summary of the conflicting evidence in discussing Dr. Janay's opinions and provided a specific and legitimate reason supported by substantial evidence in assigning little weight to Dr. Janay's opinions. *See Garrison*, 759 F.3d at 1012.

Second, in discussing Dr. Janay's opinions, the ALJ noted that Plaintiff stated that she does not use an assistive device, but is able to go for short walks, go out alone, and go to the store. (AR 23-24, citing AR 200.) An ALJ may properly discount a treating physician's opinion that is inconsistent with evidence of the claimant's daily activities. *See Rollins*, 261 F.3d at 856. Accordingly, this was a specific and legitimate reason for giving little weight to Dr. Janay's opinions.[3]

However, a finding that a treating physician's opinion is inconsistent with other evidence in the record "means only that the opinion is not entitled to 'controlling weight.'" SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[4] "Even when there is substantial evidence contradicting a treating physician's opinion such that it is no longer entitled to controlling weight, the opinion is nevertheless 'entitled to deference.'" *Weiskopf v. Berryhill*, 693 F. App'x 539, 541 (9th Cir. 2017) (citing *Orn*, 495 F.3d at 633); *see* 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012 to Mar. 26, 2017) (when a treating source's medical opinion is unsupported by

_____

limited [her] to sedentary work.'" (JS 16.) Instead, Plaintiff argues that Dr. Janay's opinion "reduced Plaintiff's RFC to *less* than sedentary work." (*Id.*) However, Plaintiff fails to show how this error, if any can be found, is harmful. *See Molina*, 674 F.3d at 1111 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

[3] Plaintiff argues that "the presence of the contradictory opinions of the non-examining State Agency medical consultants, in and of itself, did not constitute a specific and legitimate reason for rejecting the opinion of the treating physician, and the ALJ failed to present any other legally sufficient reasons for rejecting Dr. Janay's opinion." (JS 17.) While the ALJ assigned great weight to the opinions of the state agency medical consultants, the ALJ did not rely on these opinions in affording Dr. Janay's opinions little weight. (*See* AR 23-24.)

[4] Although this Ruling was rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298 (S.S.A. Mar. 27, 2017), it remains applicable to Plaintiff's claim.

1    medical evidence or is inconsistent with other substantial evidence, such that it does

2    not receive controlling weight, the ALJ must apply the listed factors to determine its

3    weight). The opinion "must be weighed using all of the factors provided in 20 C.F.R.

4    §§ 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4. These factors

5    include, *inter alia*, the length of the treatment relationship, the frequency of

6    examination, and the nature and extent of the treatment relationship. 20 C.F.R.

7    § 404.1527(c). Although the ALJ is not required to analyze each factor in detail, the

8    ALJ must indicate that he has considered all the relevant factors. *See Carbajal v.*

9    *Berryhill*, No. EDCV 17-0970-AFM, 2018 WL 1517161, at *4 (C.D. Cal. Mar. 27,

10   2018) (collecting cases); *Clark v. Berryhill*, No. 3:16-CV-02854-BEN-AGS, 2018

11   WL 948489, at *2 (S.D. Cal. Feb. 20, 2018).

12         Here, the record reflects that treating physician Dr. Janay saw Plaintiff every

13   four to 12 weeks beginning, at the latest, in June 2016. (*See* AR 384-87.) The ALJ

14   appears to have considered the supportability and consistency of Dr. Janay's opinions

15   (*see* AR 23-24), but did not indicate that he also considered the examining and

16   treatment relationship, the length and frequency of examination, nature and extent of

17   treatment relationship, or specialization of the doctors. The ALJ therefore failed to

18   consider all of the relevant factors, and "[t]his failure alone constitutes reversible

19   legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

20         Despite an ALJ's error, the Court may uphold the ALJ's decision when the

21   error is harmless. *Treichler*, 775 F.3d at 1099. An error is harmless if it is

22   "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at

23   1115, or "if the agency's path may be reasonably discerned," *Buchanan v. Colvin*,

24   636 F. App'x 414, 415 (9th Cir. 2016). Here, the ALJ failed to discuss Plaintiff's

25   treatment relationship with Dr. Janay with any specificity. The ALJ simply

26   acknowledged that Dr. Janay was Plaintiff's treating physician. This assessment does

27   not satisfy the ALJ's obligation. *See Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4

28   (9th Cir. 2018) (finding that "a cursory acknowledgment" of a physician as a "treating

physician" does not indicate that the factors were properly considered).  It is not clear that the ALJ considered all of the relevant factors before giving the opinions little weight, and "[t]he court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions."  *See Ros v. Berryhill*, No. 2:15-CV-2389 DB, 2017 WL 896287, at *4 (E.D. Cal. Mar. 7, 2017) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).  On this record, the Court cannot conclude that the error was harmless.

In sum, the Court finds that the ALJ did not properly evaluate the opinions of Dr. Janay.  Accordingly, remand is warranted on this issue.

### C.    The Court Declines to Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### D.    Remand for Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances).  Before ordering remand for an award of benefits, three requirements must be met:  (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Id.* (citations

omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Plaintiff contends that the ALJ's failure "to provide the requisite reasons for rejecting the medical opinions of Plaintiff's treating physician" warrants crediting Dr. Janay's opinion as a matter of law. (JS 21.) Additionally, Plaintiff contends that Plaintiff's testimony should be credited as a matter of law. (JS 21-22.) Accordingly, Plaintiff requests that the case be remanded for an award of benefits, or in the alternative, remanded for further proceedings. (JS 22.) The Commissioner contends that the matter should be remanded for further administrative proceedings. (JS 22.)

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ erred in assessing and discounting Dr. Janay's opinions. On remand, the ALJ shall reassess and properly weigh Dr. Janay's opinions. The ALJ shall then reassess Plaintiff's RFC and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V.  **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  July 10, 2020

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

23